UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

Mount Clemens Investment Group, L.L.C.,

    Plaintiff,

v.

Borman's Inc., et al.,

    Defendants.
                                               /

Case No. 10-12679

Honorable Nancy G. Edmunds

**ORDER DENYING PLAINTIFF'S
MOTION FOR PRELIMINARY INJUNCTION [7]**

In this motion for preliminary injunction, the Court must decide whether Plaintiff Mount Clemens Investment Group, L.L.C. ("Plaintiff"), has alleged and shown the type of financial ruin that satisfies the irreparable harm a court must find to issue a preliminary injunction. For a court to issue a preliminary injunction based on financial ruin, the moving party must persuade the court that money damages can not compensate it for the alleged harm suffered. If money damages can compensate the moving party, a preliminary injunction is not appropriate. Because the Court finds that money damages would compensate Plaintiff for its alleged harm, the Court DENIES Plaintiff's Motion for Preliminary Injunction.

**I.    Facts**

This motion hinges on Plaintiff's allegation of financial ruin flowing from the failure to perform a lease agreement. To fully understand Plaintiff's argument why it believes it is deserving of a preliminary injunction and why this argument ultimately fails, the Court

will look at the parties' background, the alleged breach, and Plaintiff's financial ruin claim.

### A. Background

#### 1. The Lease

On June 9, 1997, Plaintiff's predecessor, Mt. Clemens Real Estate Ventures, L.L.C. ("Ventures"), entered into a lease (the "Lease") with Defendant Borman's, Inc. ("Borman's"). (Lease, Pl.'s Mot. for Prelim. Inj., Ex. A.) The Lease required Borman's to open and operate a Farmer Jack grocery store at Ventures' shopping center (the "Shopping Center") for 20 years. (*Id.*)

Under the Lease's terms, Borman's was to pay monthly: $54,229.17 for the first ten years; $57,820.00 for the eleventh through fifteenth years; and $61,320.00 for the remaining years. (*Id.*) The yearly totals for the three time periods are $650,750.04, $693,840.00 and $735,840.00. (*Id.*)

#### 2. The Guaranty

Along with the Lease's execution, Borman's parent company, Defendant The Great Atlantic & Pacific Tea Company, Inc. ("GAPTC"), executed a guaranty (the "Guaranty"). (Lease, Pl.'s Mot. for Prelim. Inj., Ex. A.) In the Guaranty, GAPTC guaranteed the "punctual payment and performance [of all of Borman's] obligations pursuant to the Lease." (*Id.*) GAPTC's liability under the Guaranty, is "direct and unconditional and may be enforced without requiring [Ventures] first to resort to any other right, remedy or security." (*Id.*) GAPTC remains liable under the Guaranty for the entire term of the

Lease, unless Ventures and Borman's "mutually agree to terminate" the Lease. (*Id.*)

The Guaranty also indemnified GAPTC to Ventures for

> all obligations, demands and liabilities, by whomever asserted, and against all losses in any way suffered, incurred or paid by Ventures as a result or in any way arising out of . . . a breach by Borman's of any of its Obligations and to pay all costs and expenses, including reasonable attorneys' fees, of any proceeding by [GAPTC] to enforce [the] Guaranty.

(*Id.*) The Guaranty binds all GAPTC's successors and assigns and extends the Guaranty's benefits to all of Ventures' successors and assigns. (*Id.*)

### 3. Plaintiff's Interest

In 2003, Ventures transferred its interest in the Lease to Plaintiff. (Afr. Aff., Pl.'s Mot. for Prelim. Inj, Ex. B, ¶¶ 4, 9.) Plaintiff's sole asset was the ownership and operation of the Shopping Center. (*Id.* ¶ 3.)

## B. Borman's Alleged Breach

From 2003 to 2007, Borman's made the required Lease payments. In July, 2007, Borman's stopped operating its Farmer Jack store at the Shopping Center, but it continued to pay the Lease's required rent for the next three years. (*Id.* ¶ 6.) On June 1, 2010, Borman's notified Plaintiff that it would no longer pay the Lease's rent, and immediately stopped paying. (*Id.* ¶ 7; Pl.'s Mot. for Prelim. Inj., Ex. D; Defs.' Resp. to Pl.'s First Req. for Admis., Interrogs. and Doc. Req., Pl's Supplemental Brief, Ex. 2.)

## C. Plaintiff's Claimed Financial Ruin

### 1. Damages and Foreclosure

Because Borman's stopped paying its rent, Plaintiff states that it will not be able to meet its mortgage payment (the "Mortgage"). (Afr. Aff., Pl.'s Mot. for Prelim. Inj., Ex. B,

¶ 13.) Plaintiff, in addition, states that it will be unable to operate or maintain the Shopping Center. (*Id.*) Plaintiff's monthly Mortgage payment consists of $46,991.20 (principal and interest), $15,130.01 (tax escrow), and $956.21 (insurance). (*Id.* ¶ 12.) Borman's Lease-required payment is $57,820.00 per month, which covers over 80% of the total Mortgage payment. (*Id.* ¶ 5.) Including the October, 2010 rent payment, Plaintiff claims Borman's owes $289,100.00 in rent. (Supplemental Afr. Aff., Pl.'s Supplemental Brief, Ex. 1, ¶ 8.) Although Plaintiff has requested payment from GAPTC under the Guaranty, GAPTC has denied the request. (Pl.'s Mot. for Prelim. Inj., Ex. D.)

On June 21, 2010, Plaintiff received notice from Wells Fargo Bank, N.A., ("Wells Fargo"), the current holder of the loan and note secured by the Mortgage, that Plaintiff was in default on its mortgage payments since it had failed to make its required payments from June 1, 2010. (Pl.'s Mot. for Prelim. Inj., Ex. H.) Wells Fargo also informed Plaintiff that it was accelerating the loan, declaring the entire amounts immediately due and payable, and increasing the interest rate on the loan. (*Id.*) Wells Fargo also made a demand on Plaintiff's guarantor, Mr. Mostafa M. Afr ("Afr"), for the full amount owed. (*Id.*)

Because of Borman's failed rental payments, Plaintiff claims that Wells Fargo has initiated foreclosure proceedings and demanded the full $8,283,519.00 amount owing on the note, loan, and mortgage. (Supplemental Afr. Aff., Pl.'s Supplemental Brief, Ex. 1, ¶¶ 13, 15, 16.) As a result of these proceedings and demand, Plaintiff alleges that it will suffer irreparable harm, including the loss of the Shopping Center through foreclosure. (*Id.* ¶ 16.)

### 2. Plaintiff's Financial History and Attempt to Rent the Shopping Center

Notwithstanding Plaintiff's allegation that Borman's rent payment failure caused Plaintiff to become insolvent, Defendants Borman's and GAPTC have indicated that Plaintiff had fallen behind on its loan payments and owed $213,695.20 for the period September 1, 2007, through March 1, 2009. (Defs.' Resp., Ex. 6.)

One month after Borman's stopped paying rent, on July 22, 2010, Plaintiff entered into a year-long property management agreement with Howard Realty Group, Inc. ("Howard"), for Howard to manage, operate, control, rent and lease the Shopping Center. (Pl.'s Supplemental Brief, Ex. 7.) Despite entering into the property management agreement, Plaintiff was unable to retain another tenant and Wells Fargo began foreclosure proceedings. Wells Fargo originally scheduled a foreclosure sale for the Shopping Center on September 24, 2010, but then delayed the sale until October 8, 2010, due to Plaintiff's request and its motion for preliminary injunction. (Pl's Supplemental Brief, Exs. 3, 4.)

## II.  Standard of Review

In deciding whether to grant a preliminary injunction, a district court considers: "(i) whether the movant is likely to succeed on the merits; (ii) whether the movant will suffer irreparable injury in the absence of an injunction; (iii) whether the injunction will cause substantial harm to others; and (iv) whether the injunction would serve the public interest." *Capobianco v. Summers*, 377 F.3d 559, 561 (6th Cir. 2004). "These factors are not prerequisites, but are factors that are to be balanced against each other." *Overstreet v. Lexington Fayette Urban County Gov't*, 305 F.3d 566, 573 (6th Cir. 2002). If fewer than all four of the factors are dispositive, a district court need not make specific findings on all four. *Int'l Longshoremen's Ass'n AFL-CIO, Local Union No. 1937 v.*

*Norfolk S. Corp.*, 927 F.2d 900, 903 (6th Cir. 1991), *cert. den.* 502 U.S. 813 (1991) (citation omitted).

**III.  Analysis**

For the Court to issue a preliminary injunction, Plaintiff must show that "the circumstances clearly demand it;" otherwise, the Court cannot issue such an "extraordinary remedy."  *Overstreet*, 305 F.3d. at 573.  Here, Plaintiff fails to persuade the Court that it will suffer irreparable harm if the Court does not issue a preliminary injunction.  Although Plaintiff argues that it will suffer irreparable harm because Borman's failed payments will lead to Plaintiff's financial ruin, the Court finds that money damages can fully compensate Plaintiff's alleged harm.  If money damages can compensate a plaintiff's harm, then the harm is not irreparable and a preliminary injunction is not warranted.  *Overstreet*, 305 F.3d at 578 (citing *Basicomputer Corp. v. Scott*, 973 F.2d 507, 511 (6th Cir. 1992).  To the extent Plaintiff claims that is entitled to a preliminary injunction based on the Shopping Center's status as real property, this claim also fails.  (*See* Pl.'s Mot. for Prelim. Inj. at 6.)  Plaintiff's loss is akin to an investment gone bad–something not so extraordinary to warrant a preliminary injunction.

**A.  Plaintiff Fails to Establish Irreparable Harm**

"A showing of 'probable irreparable harm is the single most important prerequisite for the issuance of a preliminary injunction.'"  *Lucero v. Detroit Pub. Schs.*, 160 F.Supp. 2d 767, 801 (E.D. Mich. 2001) (quoting *Reuters Ltd v. United Press Int'l, Inc.*, 903 F.2d 904, 907 (2d Cir. 1990)).  Without such a showing, the Court cannot issue a preliminary injunction. *Id.  See Hacker v. Fed. Bureau of Prisons*, No. 06-12425, 2006 WL

2559792, at *8 (E.D. Mich. Sept. 1, 2006) (Lawson, J.) (holding "[t]he failure to demonstrate irreparable harm is fatal to the petitioner's request for a preliminary injunction. Therefore, the Court need not evaluate the other factors."). Here, the Court does not need to look beyond the irreparable harm factor, since it finds that money damages would be a sufficient remedy.

Plaintiff claims that the loss of its Shopping Center due to its inability to meet its mortgage payments constitutes irreparable harm. Although financial ruin can constitute irreparable harm, Plaintiff's situation falls short of those situations from which courts have issued preliminary injunctions based on financial irreparable harm.

Both parties rely on *Performance Unlimited, Inc. v. Questar Publishers, Inc.*, 52 F.3d 1373 (6th Cir. 1995) *reh'g and reh'g en banc den*. *Performance* is the main Sixth Circuit opinion that supports the proposition that financial ruin can constitute irreparable harm. In *Performance*, the court addressed an action for breach of contract, for a declaration of the parties' contractual rights, and for a preliminary injunction arising from the nonpayment of royalties pursuant to a licensing agreement between the plaintiff and the defendant. *Id.* at 1375. The license agreement required the defendant to make semi-annual royalty payments to the plaintiff. *Id.* at 1376. One day, the defendant sent a letter to the plaintiff stating that it would no longer make the required royalty payments because it believed that plaintiff had breached the license agreement. *Id.* The defendant opened an escrow account and began depositing the royalty payments into that. *Id.* The district court denied the plaintiff's request for a preliminary injunction. *Id.* at 1377. In reviewing the irreparable harm factor, the Sixth Circuit ultimately held that "[t]he impending loss or financial ruin of [the plaintiff's] business constitutes irreparable

injury." *Id.* at 1382. To hold so, the court looked to the record in which the plaintiff presented uncontradicted affidavits stating that the plaintiff would not be able to meet payroll, pay federal withholding taxes, pay vendors, pay royalties owed to licensees, or continue operating more than two or three weeks if the court did not require the defendant to pay its royalties. *Id.* at 1381. An affidavit also stated that the defendant's royalties constituted 60% of the plaintiff's total projected revenues. *Id.* Without these royalties, the court found that the plaintiff would be unable to operate its business and the business would suffer economic collapse or insolvency. *Id.* at 1382. The court recognized that a district court generally should not grant a preliminary injunction in cases in which the potential harm is purely financial. *Id.* But the court also held that "an exception exists where the potential economic loss is so great as to threaten the existence of a movant's business." *Id.*

In *Almetals, Inc. v. Wickeder Westfalenstah L GmbH*, No. 08-10109, 2008 WL 4791377 (E.D. Mich. Oct. 29, 2008) (Edmunds, J.), the plaintiff entered into a long-term contract with the defendant in which the defendant produced and supplied a unique type of metal. The defendant later attempted to impose cash on delivery ("COD") terms to the contract. *Id.* at *9. The Court found that the COD terms would cause irreparable harm to the plaintiff since it could not meet the COD terms and the defendant was the only supplier of the unique metal. *Id.* at *8. The plaintiff attempted to find an alternate source for the special type of metal that the defendant produced, but it was unable to do so. *Id.* at *4. The Court noted that, without the injunction, the plaintiff would go out of business, twenty-five people would lose their jobs, the plaintiff would be unable to supply clad metal to its customers, and the plaintiff would suffer injury to its reputation.

8

*Id.* at *6.  These damages, the Court pointed out, were incalculable and irremediable. *Id.* at *9.

Here, Plaintiff's situation falls short of the above examples.  Plaintiff's situation falls short because money damages can compensate it for the alleged harm done by Defendants.  Granted, Plaintiff has put forth exhibits stating that it will suffer financial ruin, be unable to maintain the common spaces of the Shopping Center, and lose its only asset, the Shopping Center.  But Plaintiff has not made any allegations that distinguish it from any other investment decision that goes awry and leads to a foreclosure.  The plaintiffs in *Performance* and *Almetals* presented the court with extraordinary circumstances which warranted the injunctions.  In *Performance*, the plaintiff presented evidence that it could not meet payroll, pay federal withholding taxes, pay vendors, pay royalties owed to licensees, or continue operating more than two or three weeks.  In *Almetals*, the plaintiff presented evidence that it would go out of business, twenty-five people would lose their jobs, it would be unable to supply clad metal to its customers, and the plaintiff would suffer injury to its reputation.  Here, Plaintiff alleges loss of rent that would lead to the inability to maintain the Shopping Center. Plaintiff has not alleged unique circumstances that would warrant a preliminary injunction.  Money damages would fully compensate Plaintiff.[1]

---

[1] *See Tele-Controls, Inc. v. Ford Indus., Inc.*, 388 F.2d 48, 50 (7th Cir. 1967) (noting that a preliminary injunction was not appropriate when the complaint and affidavit referenced specific lost dollar amounts–allowing the court to easily compute the monetary damages, and finding that since the court could compute the monetary damages, equitable relief was not required).  Here, at this controversy's core is money–money to satisfy the failed rent and money to compensate Plaintiff for Borman's alleged breach.  In the event Borman's and GAPTC are owing, Plaintiff's requested relief will allow for a quick computation of money damages.

Plaintiff's argument that the Shopping Center's status as real property automatically means that its loss would result in irreparable harm also fails. Plaintiff's Shopping Center is commercial real estate used as an investment property. Plaintiff can recoup its investment loss through money damages. *See Geneva Ltd. Partners v. Kemp*, 779 F.Supp. 1237 (N.D.Cal. 1990) (denying the plaintiff's request for a preliminary injunction because it would not suffer irreparable harm in losing commercial real estate and holding "[w]hile the [c]ourt recognizes that real property is often judicially perceived as unique, in this case plaintiffs are faced with the loss of commercial, and not residential, property. They are thus threatened with an economic loss which is compensable in large part, if not entirely, in damages." *Id*. at 1241). *See also Simone v. N.V. Floresta, Inc.*, Nos. 98-0268, 98-1970, 1999 WL 429504 (S.D.N.Y. June 18, 1999) (denying the requested specific performance equitable remedy and holding "[p]roperty is not unique in the sense of being irreplaceable to this buyer who was merely investing in commercial real estate . . . [u]niqueness in the sense of physical difference does not itself dictate the propriety of equitably relief . . . . Economic theory is concerned with the degree to which consumers are willing to substitute the use of one good for another." *Id*. at *11). Since Plaintiff has not persuaded the Court that the Shopping Center is anything but an investment and that the Shopping Center is not so unique to call for a preliminary injunction, Plaintiff has not shown that the Shopping Center's loss would cause it an irreparable harm.

## IV.     Conclusion

On behalf of the foregoing reasons, the Court DENIES Plaintiff's Motion for Preliminary Injunction.

>	s/Nancy G. Edmunds
>	Nancy G. Edmunds
>	United States District Judge

Dated: October 12, 2010

I hereby certify that a copy of the foregoing document was served upon counsel of record on October 12, 2010, by electronic and/or ordinary mail.

>	s/Carol A. Hemeyer
>	Case Manager